1

2

3              **UNITED STATES DISTRICT COURT**

4              **DISTRICT OF ARIZONA**

5

6    **Andrew E. Zalkow,** *et al*.          )
                                              )        **2:14-cv-00243 JWS**
7              **Plaintiffs,**                )
                                              )        **ORDER AND OPINION**
8         **vs.**                             )        **[Re: Motion at Docket 61]**
                                              )
9    **Taymor Industries USA, Inc.,** *et al*. )
                                              )
10             **Defendants.**                )
                                              )

11

12                        **I.  MOTION PRESENTED**

13         At docket 61 plaintiffs Andrew E. Zalkow and Zalkow Discount Sourcing

14   (collectively, "Zalkow") move to enforce the parties' alleged May 7, 2015 settlement

15   agreement.  Defendants Taymor Industries U.S.A., Inc. and Taymor Industries Ltd.

16   (collectively, "Taymor") respond at docket 62.  Zalkow replies at docket 63.  Oral

17   argument was requested but would not assist the court.

18                        **II.  BACKGROUND**

19         The court has described the background giving rise to this litigation in detail in

20   the order at docket 15.  It need not be repeated here.  Suffice it to say for purposes of

21   the present motion that Zalkow sued his former employer, Taymor, alleging that his

22   2013 annual bonus was insufficient and that Taymor improperly interfered with his

23   recruiting efforts after he resigned.

24         At docket 58 Zalkow informed the court pursuant to LRCiv 40.2(d)[1] that "the

25   parties reached a settlement in this matter to dismiss all claims in this action" and that

26

27   _____

28         [1]LRCiv 40.2(d) provides in pertinent part that "[w]hen a case set for trial is settled out of
     Court or any motion is pending before a District Judge or Magistrate Judge and is voluntarily
     resolved by the parties or their counsel, it shall be the duty of counsel to inform the Clerk and
     the chambers of such District Judge or Magistrate Judge immediately."

1    the parties would submit a stipulation for dismissal after they execute the settlement

2    documents.[2]  After about a month-and-a-half passed without word from the parties,

3    Zalkow filed the current motion claiming that Taymor is now trying to back out of the

4    settlement agreement.  The crux of the parties' dispute is whether they agreed to settle

5    all of their claims against one another or just the claims that Zalkow asserted against

6    Taymor in this case.

7           The following facts underlying the parties' dispute are undisputed.  In the spring

8    of 2015 Taymor's counsel and Zalkow's counsel exchanged the following settlement

9    volleys:

10         •      Taymor's counsel wrote Zalkow's counsel and offered Zalkow $300,000 in

11                exchange for "*full settlement of all claims* against Taymor."[3]

12         •      Zalkow's counsel responded with a written counteroffer: $950,000 in

13                exchange for dismissal of "*the lawsuit* in its entirety, with prejudice."[4]

14         •      Taymor's written counteroffer: $325,000 in exchange for "full settlement of

15                the *pending dispute*."[5]

16         •      Zalkow's written counteroffer: $900,000 "in full and final settlement of this

17                matter."[6]

18         •      Taymor's written counteroffer: $350,000.

19         •      Zalkow's written counteroffer: $850,000 "in full and final settlement of this

20                matter."[7]

21

22    _____

23    [2]Doc. 58 at 1.

24    [3]Doc. 62-1 at 9 (emphasis added).

25    [4]*Id.* at 11 (emphasis added).

26    [5]*Id.* at 13 (emphasis added).

27    [6]*Id.* at 15.

28    [7]*Id.* at 19.

1    •      Taymor's May 5 verbal counteroffer of $450,000.[8]

2    •      Zalkow's May 5 verbal counteroffer of $550,000.[9]

3    •      Taymor's May 5 reiteration of its verbal $450,000 counteroffer of earlier

4          that day.[10]

5    •      On May 7, Zalkow's counsel sent an email to Taymor's counsel stating

6          that Zalkow accepted Taymor's May 5 offer "in settlement of the pending

7          lawsuit."[11]

8    •      Taymor's counsel responded on May 7, acknowledging Zalkow's

9          acceptance.[12]

10   •      Taymor sent Zalkow a draft settlement that contained a comprehensive

11         mutual release of "any and all past, present, or future claims."[13]

12   •      Zalkow informed the court that the parties had reached a settlement.[14]

13        On June 9, Zalkow's counsel sent Taymor's counsel his revisions to the draft

14   settlement agreement accompanied by an email explaining that his revisions were

15   "primarily aimed at making the language track the scope of the settlement agreed to by

16   the parties."[15]  Zalkow's version of the agreement narrowed the settlement's scope to

17   only the claims raised in this lawsuit.[16]  Taymor responded by stating that it had always

18

---

19   [8]*Id.* at 4 ¶ 15.

20   [9]Doc. 62-4 at 4 ¶ 16.

21   [10]Doc. 62-1 at 4 ¶ 17.

22   [11]Doc. 61-10 at 2.

23   [12]Doc. 61-11 at 2.

24

25   [13]Doc. 62-1 at 4 ¶ 20; *id.* at 38-43.

26   [14]Doc. 58.

27   [15]Doc. 62-1 at 49.

28   [16]*See, e.g., id.* at 52.

-3-

1  intended that the settlement would cover all claims, not just those asserted in this

2  case.[17]

### III.  STANDARD OF REVIEW

4  The court has inherent authority to enforce agreements that settle litigation

5  before it.[18]  State contract law governs the question whether the parties have reached

6  an enforceable agreement.[19]  Under Arizona law an "express contract is ordinarily

7  thought of as an actual agreement reached by parties who have openly uttered or

8  declared the terms thereof at the time of making it, either orally or in writing.  The

9  fundamental requisites of such a contract are an offer, an acceptance, a meeting of the

10 minds, and a quid pro quo."[20]

### IV. DISCUSSION

12 Taymor argues that the parties' May 7 exchange did not form a binding contract

13 for four reasons: (1) there was no acceptance, (2) there was no meeting of the minds,

14 (3) it is not in writing, and (4) it is not signed by the parties or their attorneys.  Each of

15 these arguments lacks merit.

16 **A.    Acceptance**

17 "An acceptance is a manifestation of assent to the terms thereof made by the

18 offeree in a manner invited or required by the offer."[21]   Zalkow contends that his

19 counsel's May 7 email was a valid acceptance of Taymor's verbal settlement offer,

20 creating a binding contract to settle "the pending lawsuit" only.  Taymor disagrees,

21

22   [17]*Id.* at 61-62.

23   [18]*See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

24   [19]*Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).

25   [20]*Malcoff v. Coyier*, 484 P.2d 1053, 1055 (Ariz. Ct. App. 1971) (quoting *Alexander v.*
26 *O'Neil*, 267 P.2d 730, 734 (Ariz. 1954)).

27   [21]*K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct.
App. 1983) (quoting Restatement (Second) of Contracts § 50 (1981) (internal quotation marks
28 omitted)).

1  asserting that it "made *no* offer, ever, except for full settlement of all claims.  That is the

2  only offer which could have been accepted."[22]  But this assertion is at odds with the

3  facts in the record.  On April 23, in the last written correspondence between the parties'

4  counsel where the scope of the agreement was discussed, Taymor's counsel wrote that

5  Taymor would offer Zalkow a sum certain "in full settlement of the pending dispute."

6  The only way to reasonably interpret this statement is that Taymor was offering to settle

7  the claims in this case.  It follows that Zalkow's May 7 email, in which Zalkow accepted

8  Taymor's offer "in settlement of the pending lawsuit," was an acceptance of Taymor's

9  earlier, limited-scope offer.

10        Taymor also argues that Zalkow's May 7 email was a counteroffer, not an

11  acceptance, because it included terms different from those offered.[23]  This argument is

12  undermined by Taymor's response to Zalkow's May 7 offer, however, which does not

13  contend that Zalkow's email contained a new offer.  To the contrary, it states that

14  Zalkow had accepted "Taymor's offer."[24]

15  **B.    Meeting of the Minds**

16        "It is well-established that before a binding contract is formed, the parties must

17  mutually consent to all material terms.  A distinct intent common to both parties must

18  exist without doubt or difference, and until all understand alike there can be no

19  assent."[25]  Mutual assent, sometimes referred to as a "meeting of the minds," "is based

20  

21      [22]Doc. 62 at 4 (emphasis in original).

22      [23]*See 2020 Processing LLC v. True Auto LLC*, No. 14-CV-00950-JAT, 2014 WL
23  6667908, at *3 (D. Ariz. Nov. 25, 2014) ("Arizona law requires a mirror image acceptance of an
    offer to consummate an agreement.  Thus, the addition of materially different terms to an
24  agreement results in a purported acceptance instead being treated as a counteroffer containing
    the additional terms.") (citing *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 422-
25  23 (Ariz. Ct. App. 1983)); Restatement (Second) of Contracts § 59 ("A reply to an offer which
    purports to accept it but is conditional on the offeror's assent to terms additional to or different
26  from those offered is not an acceptance but is a counter-offer.").

27      [24]Doc. 62-1 at 35.

28      [25]*Hill–Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz.1990).

1   on objective evidence, not on the hidden intent of the parties.  In other words, what is

2   operative is the objective manifestations of assent by the parties."[26]

3       Taymor argues that there was no mutual assent here because the scope of its

4   April 9 settlement offer was broad, covering all of Zalkow's "claims against Taymor."

5   Even if the scope of Taymor's April 9 settlement offer was broad, however, Zalkow's

6   counteroffer narrowed the scope,[27] and Taymor adopted Zalkow's narrow scope in its

7   counteroffer after that.[28]  Despite Taymor's self-serving contention that it never intended

8   to narrow the scope of the settlement to the pending dispute between the parties, that is

9   exactly what its April 23 letter does.  Because the court must base its ruling on this

10  objective evidence, not Taymor's hidden intent, mutual assent is present.

11      **C.**    **Local Rule 83.7**

12      Local Rule 83.7 states that "[n]o agreement between parties or attorneys is

13  binding, if disputed, unless it is in writing signed by the attorney of record . . ., or made

14  orally in open court and on the record . . . ."[29]  Taymor argues that the parties'

15  agreement is not binding under this rule because it is not in writing and it is not signed

16  by the parties or their counsel.  These arguments lack merit.  Although Taymor's offer is

17  not in writing, Zalkow's acceptance is.  And Zalkow's acceptance recites the

18  agreement's terms in writing: Zalkow will dismiss this lawsuit in exchange for $450,000.

19      Further, the attorneys for both parties "signed" the agreement via their emails

20  assenting to the agreement's terms.  Taymor suggests that in *Haywood Securities, Inc.*

21  *v. Ehrlich*,[30] the Arizona Supreme Court held that a typewritten name on a document

22  does not constitute a "signing" absent extrinsic evidence that the individual intended for

23

24  [26]*Id.* at 815.  *See also* Restatement (Second) of Contracts § 17 cmt. c (1981).

25  [27]Doc. 62-1 at 11.

26  [28]*Id.* at 13.

27  [29]LRCiv 83.7.

28  [30]149 P.3d 738 (Ariz. 2007).

1   his name to constitute his signature.[31]  This is not what *Haywood Securities* holds.

2   Instead, the *Haywood Securities* court held that a document signed with an electronic

3   signature is considered "signed" if the document "has affixed to it in some form the

4   name of the [signatory] that evidences an intention of authentication."[32]  The court did

5   not require extrinsic evidence; it was clear from the document's context that the

6   electronic signature was meant to authenticate the document.

7          Counsel for both parties affixed their names to the emails they exchanged on

8   May 7.  By doing so, counsel clearly demonstrated their intent to authenticate those

9   emails.  Those emails are considered "signed" for purposes of Local Rule 83.7.

10                                **V.  CONCLUSION**

11         Based on the preceding discussion, plaintiffs' motion at docket 61 is GRANTED.

12  The parties reached an enforceable agreement under which Zalkow will dismiss this

13  lawsuit, and Taymor will pay Zalkow $450,000.  Unless closing papers are sooner filed,

14  the parties shall file a report on the status of the settlement in 28 days.

15         DATED this 27th day of August 2015.

16

17                                      /s/ JOHN W. SEDWICK
                                 SENIOR UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26  ───────────────

27         [31]Doc. 62 at 7.

28         [32]*Haywood Sec., Inc.*, 149 P.3d at 741.

                                      -7-